Josephine GOSS and Thomas A. Goss, Infants, by Ralph Goss, Their Father and Next Friend, Plaintiffs-Appellants,

v.

The BOARD OF EDUCATION OF THE CITY OF KNOXVILLE, TENNESSEE, Defendants-Appellees.

No. 14759.

United States Court of Appeals
Sixth Circuit.

July 6, 1962.

Avon N. Williams, Jr., Nashville, Tenn., and Jack Greenberg, New York City (Carl A. Cowan, Knoxville, Tenn., Z. Alexander Looby and Avon N. Williams, Jr., Nashville, Tenn., Jack Greenberg and James M. Nabrit, III, New York City on the brief, Derrick A. Bell and Michael Meltsner, New York City, of counsel), for appellants.

S. Frank Fowler, Knoxville, Tenn. (S. Frank Fowler, Knoxville, Tenn., on the brief, Claude K. Robertson, Fowler, Rowntree & Fowler, Knoxville, Tenn., of counsel), for appellees.

Before CECIL, WEICK and O'SULLIVAN, Circuit Judges.

CECIL, Circuit Judge.

This is the second appeal in this case. The parties are the same as they were in the first appeal decided by us April 3, 1962. Josephine Goss and Thomas A. Goss, Infants, by Ralph Goss, Their Father and Next Friend, et al., Appellants v. The Board of Education of the City of Knoxville, Tennessee, a Body Corporate or Continuous Legal Entity, c/o Dr. John H. Burkhart, President, et al., Appellees, 301 F.2d 164, C.A.6. We will refer to the parties as plaintiffs and defendants, as they were in the District Court.

The case is now before us on a plan submitted by the Board of Education and approved by the District Judge, concerning the use of Fulton High School by Negro students. Judge Taylor had withheld his approval from the plan which was before us in the first appeal, so far as it applied to Fulton High School.

This school has been a white school and teaches vocational and technical courses, many of which were not regularly of-

fered to Negro students at Austin High School, the Negro counterpart of Fulton, under the bi-racial system. Under the grade-a-year plan of integration, submitted by the Board in the first plan, Negro students would have been denied the advantages of this school for eight years.

The plan now before us provides: 1. For a continuation of the general policy of providing vocational facilities at Austin and at Fulton high schools. 2. If a course cannot be established at either school because of lack of sufficient number of qualified students, and it is already offered at the other school, students may transfer to the school where the course is given. 3. If a course is not given at either school and there is a sufficient number of qualified students in combination from the two schools, the course may be established at either school. 4. The criteria for determining whether or not new courses are to be established. 5. That "the Board of Education will follow the rules and regulations as set forth from time to time by the State Board for Vocational Education." 6. That the principals of the schools, the Director of Vocational Education and the Superintendent of Schools will carry out the plan "consistent with sound school administration and without regard to race." 7. That the plan was to be effective with the beginning of the school year in September 1961.

The plaintiffs have raised numerous objections to the plan. This plan was approved and the appeal perfected while the first appeal was pending. Consequently, neither the court nor the parties could be guided by our subsequent opinion. In that opinion we decided some of the questions that are now presented by the plaintiffs.

We held there that "the Supreme Court contemplated that there would have to be plans for the transition and that some individual rights would have to be subordinated for the good of many. The smooth working of a plan could be thwarted by a multiplicity of suits by individuals seeking admission to grades

not yet reached in the desegregation plan." (p. 168.)

We do not here discuss the issues decided in the first case, but address ourselves to the plan now before us concerning Austin and Fulton High Schools. Does this plan insure to all students, without regard to race, an equal opportunity to study all courses in vocational and technical training available in either high school? In answering this question we assume that these schools will be brought into the plan of ultimate complete desegregation, in accordance with an accelerated step-by-step plan, as required by our former opinion. In the meantime, these schools must be largely accepted as separate schools, to the extent that segregation is accepted by grades in other schools not yet reached by the plan.

One of the principal objections which the plaintiffs make to the plan is No. 4, which reads as follows: "4. Factors to be used in deciding whether or not a new course is established. (a) Number of qualified students as determined by Bulletin No. 1—'Administration of Vocational Education,' Federal Security Agency, Office of Education. These are: 1. 'The desire of the applicant for the vocational training offered: 2. His probable ability to benefit by the instruction given; and 3. His chances of securing employment in the occupation after he has secured the training, or his need for training in the occupation in which he is already employed.' (Enrollment in vocational classes is limited to students who have reached their fourteenth birthday.)" (Section 21, Title 20 U.S.C.A.) "(b) Availability of space to take care of the maximum as provided by the State Board of Vocational Education. (c) Cost as determined by the Board of Education based upon availability of funds." It should be noted that this applies only to new courses; that is, a course not given in either school.

Mr. Johnson, Superintendent of the Knoxville Schools, testified with reference

to this bulletin, App. p. 21a, as follows: "And that Bulletin No. 1 is a little bulletin that is put out by the Federal Security Agency, Office of Education, entitled 'Administration of Vocational Education,' and it is sort of the Bible of vocational education for the United States, and our State Department follows this very closely and it is passed on to us here in the local community, and we must follow the minimum standards set out in this bulletin in order to get the funds from the State and Federal Government on a reimbursable basis which runs 50 percent up to 75 percent reimbursable, matching funds." The administration of this Vocational Educational program was transferred in 1953 from Federal Security Agency to the Department of Education, Health and Welfare. Section 623, Title 5 U.S.C.A., Section 5, Reorganization Plan No. 1 of 1953. The federal provisions governing this subject are embraced within sections 11–15 and 16–28 of the U.S.C.A., Title 20. It is a federal requirement that the local board of education must follow the rules and regulations of the State Board for Vocational Education, as specified in paragraph 5 of the plan. Section 18, Title 20 U.S.C.A.; 45 C.F.R. 102.12.

Assuming that paragraph 4 of the plan is in accordance with a requirement of the Federal Government, and we have no argument or authority to the contrary, we must find that it is non-discriminatory and we therefore approve it. "In the expenditure of Federal funds and in the administration of Federally aided programs of vocational education there shall be no discrimination because of race, creed, or color." 45 C.F.R. 102.18.

In paragraph 2 of the plan it is stated "the student or students may request and obtain transfer upon the terms as set out in the transfer policy now in effect in the Knoxville City Schools for vocational students, same being a part of this plan."

■ We are of the opinion that this transfer plan is too detailed and too complicated and offers too much opportunity for a transfer to be stopped either by the transferring principal or by the receiving principal. The appeal to the superintendent and then to the board would be time consuming and with little practical relief to the rejected student. Should he win his appeal, he would be hopelessly behind the class he wished to join. If a student meets the qualifications for a course not given in the school in which he is registered he should be transferred as a matter of right.

■ There is evidence that Eddie Davis, a Negro student applied for a transfer to Fulton to take a commercial art course not given at Austin. After two weeks, the principal at Austin was still trying to get enough Negro students to take commercial art to justify establishing the course there. This is unreasonable and particularly in view of paragraph 2 of the transfer plan which requires a student to make his choice at least four weeks before the end of the semester. The student body of either school could be quickly canvassed as to its interest in a proposed course and if there appears to be insufficient interest to establish it in that school, a student desiring to take that course ought to be forthwith transferred without cumbersome administrative procedure.

We conclude that the plan, if properly executed, will afford an equal opportunity to all students to participate in all of the vocational and technical courses offered either by Austin or Fulton high schools. We affirm the judgment of the District Court in approving the plan, except insofar as it pertains to the transfer procedures. We remand the case to the District Judge with instructions to retain jurisdiction and to require an amendment that will permit all students to transfer as a matter of right, when they qualify for the courses which they desire to take in another one of the two high schools here involved and such course is not available to them in the school they are attending.